## GEORGE DELKER CO. v. HESS SPRING & AXLE CO.

(Circuit Court of Appeals, Sixth Circuit. June 6, 1905.)

No. 1,398.

1. SALES—ACTION BY SELLER FOR DAMAGES—CERTAINTY OF CONTRACT.

Contracts for the sale and purchase of steel axles and springs, to be manufactured, which definitely specify the quantity and the price of each, are not rendered so uncertain that an action will not lie by the seller for their breach by a provision requiring the purchaser to specify the sizes and styles wanted.

2. SAME—CONSTRUCTION OF CONTRACT—NECESSITY OF ELECTION.

Contracts for the sale and purchase of axles and springs for vehicles, to be manufactured by the seller, required the purchaser to specify the styles and sizes from time to time as deliveries were to be made, and provided that "any goods named in this contract, for which the buyer shall neglect or refuse to specify, may, at the option of the seller, be regarded as sufficiently specified above, or, at the option of the seller, such neglect or refusal to specify may be treated as a lawful tender of all undelivered goods, and a refusal to accept same by the buyer, but shall not be construed as a waiver of any rights by the seller." *Held*, that such provision did not make an election necessary on a refusal by the buyer to specify, nor operate as a waiver of any rights the seller would have in its absence, but merely dispensed with the necessity of a tender.

3. SAME—MANUFACTURING CONTRACT—MEASURE OF DAMAGES FOR BREACH.

Contracts by which plaintiff, which was a manufacturer of vehicle axles and springs, agreed to sell and deliver to defendant within a year certain quantities of springs and axles, the styles and sizes to be specified by defendant from time to time, provided that strikes of workmen should excuse performance on the part of plaintiff, and that, in consideration of the purchase by plaintiff of steel for their manufacture, defendant should take the full quantity of springs and axles covered by the contracts, without rebate in price, in the event of a decline in the market. *Held*, that such contracts were for the manufacture of the articles sold, and not merely for the sale of products on hand or to be purchased in the market, and that the measure of damages recoverable by the seller on the refusal of the purchaser to make further specifications thereunder was the difference between the contract price of the articles contracted for and not taken and the cost of their manufacture and delivery.

In Error to the Circuit Court of the United States for the Western District of Kentucky.

The defendant in error (plaintiff below), hereinafter called the "plaintiff," was engaged in the business of manufacturing vehicle springs and axles at Carthage, Ohio, and on the 3d day of November, 1899, entered into two contracts with the plaintiff in error (defendant below), hereinafter called the "defendant," who was engaged in the business of manufacturing vehicles at Henderson, Ky. One of these contracts was to furnish 2,500 sets of axles, and the other to furnish 35 tons of springs, during the succeeding year, and the defendant agreed to accept and pay for the same. For the breach of these contracts the plaintiff brought an action, which was tried to the court without a jury, and the court found the following facts:

"(1) The plaintiff and the defendant at the date mentioned therein entered into the following:

"'Contract for Axles.

"'Made in duplicate at Carthage, Ohio, Nov. 3rd, 1899.

"'The Hess Spring & Axle Company, of Carthage, Ohio, agrees to sell, and the George Delker Co., of Henderson, Ky., agrees to buy the quantity at the prices and upon the terms and conditions stated herein.

"'1. Quantity. Not less than 2,500 sets, and not more than 2,500 sets of Nos. 11 and 12 Half Patent Axles in sizes up to and including 1 1-2 inch.

"'2. Prices. 60 per cent. discount from "Revised Standard List" with extras as per "list of extras" all attached hereto and forming part of this contract.

"'3. Terms. Note or acceptance maturing 60 days from date of invoice or 2 per cent. discount for cash if paid within 20 days from date of invoice. Settlements to be made monthly (no later than the 10th day), for previous month's shipments.

"'4. Delivery. All goods F. O. B. Carthage, Ohio, with freight allowance at ruling rate per hundred pounds to Henderson, Ky. No freight allowance on less than 250 pounds.

" '5. Specifications. The buyers agree to specify for the minimum quantity above mentioned, in approximately monthly installments.

" 'The buyers agree that not less than 80 per cent. of the amount is to be specified for, for delivery, not later than May 1st, 1900, and balance, if any, to be specified for prior to August 1st, 1900, and an option of 25 per cent. additional, if specified for delivery within each period named.

" 'Any goods named in this contract for which the buyer shall neglect or refuse to specify, may, at the option of the seller, be regarded as sufficiently specified above, or at the option of the seller, such neglect or refusal to specify may be treated as a lawful tender of all undelivered goods, and a refusal to accept same by the buyer, but shall not be construed as a waiver of any rights by the seller.

" '6. Exceptions. This agreement is contingent upon fires, strikes of workmen, accidents or other causes beyond the control of the sellers.

" 'Note:—Claims for errors, deficiencies or imperfections will only be entertained by the seller, when made within 10 days after receipt of goods.

" 'It is especially agreed that in consideration of the sellers covering on the necessary steel to go into these goods, that the buyers bind themselves to take not less than the minimum amount mentioned, without rebate in the price, in the event of a decline in the price of steel during the life of this contract.

" 'Accepted,             Accepted,

     " 'The George Delker Co.,        The Hess Spring & Axle Co.,

     " 'C. P. Schlamp.             Per W. J. Haldeman, Agt.

    " 'Nov. 25, 1899.

    " 'Pads gratis.' "

To which contract there was appended as part thereof a price list referred to in the contract, and set out in full in the findings.

"(2) The defendant knew at the time of making the said contract that the plaintiff was engaged in the business of manufacturing such axles, and defendant's president, having visited plaintiff's establishment, was in a position to know that the plaintiff would manufacture the axles.

"(3) The defendant specified for 1,440 sets of said axles, all of which were made by the plaintiff and shipped to the defendant at Henderson, Ky., though after some delay in respect to a large proportion of them; and all of the said 1,440 sets of axles were received and accepted by the defendant, and were duly paid for by it by the 1st day of May, 1900.

"(4) The defendant did not specify for the remaining 1,060 sets of said axles. It did, however, prior to January 1, 1900, leave with plaintiff the paper set forth in paragraph 3 of its amended answer to plaintiff's first cause of action, filed herein on February 10, 1904, but without intending said paper to be a specification for axles, within the meaning of that phrase as used in the contract.

"(5) The plaintiff was at all times able, ready, and willing to manufacture and supply the said 1,060 sets of axles, and in July, 1900, notified the defendant of the deficit in specifications, and requested defendant to make specifications to cover the same.

"(6) Thereafter, viz., on August 2, 1904, the defendant notified the plaintiff that it (the defendant) would not specify for any more of the axles.

"(7) The defendant had supplied to the plaintiff in a previous year, when a practically similar contract was in operation between them, a model of the character of axles defendant required for its trade, and which it used therein, and the character of the axles thus modeled was the one always made for and supplied to the defendant by the plaintiff, up to and including the 1,440 sets of axles specified for under the contract above set forth; but it does not expressly appear that the 1,060 other sets would have been specified for, or ordered to be of that sort. The list price of that sort of axles was $5.50 per set, and the price under the contract sued on was 40 per cent. thereof, namely, $2.20 per set, or a total for the 1,060 sets of $2,332. The lowest price for any axles that might have been specified for under the contract was $4.50 per set, the contract price of which was 40 per cent. thereof, namely, $1.80 per set, or a total for the 1,060 sets of $1,908. The cost of manufacturing, supplying, and shipping the former (that is to say, the $2.20 axle) to the defendant at

Henderson, Ky., would have been 95.6 cents per set, or a total of $1,013.36, to which should be added the sum of $60, the amount of freight thereon from Carthage, Ohio, to Henderson, Ky.—in all, $1,073.36—the difference between which and the agreed price of such axles being $1,258.64. The cost of manufacturing, supplying, and shipping the latter (that is to say, the $1.80 axle) to the defendant at Henderson, Ky., would have been 77.6 cents per set, or a total of $822.56, to which should be added the sum of $60, the amount of freight from Carthage, Ohio, to Henderson, Ky.—in all, $882.56—the difference between which and the contract price for this class of axles being $1,025.44.

"(8) Estimated as if this were a contract merely between a buyer, as such, and a seller, as such, upon the defendant's theory of this case the damages of the plaintiff on the 1,060 sets of axles not specified for would have been and would be $200.

"(9) The plaintiff and defendant at the date mentioned therein also entered into the following:

### " 'Contract for Springs.

" 'Made in duplicate at Carthage, Ohio, Nov. 3rd, 1899.

" The Hess Spring & Axle Company, of Carthage, Ohio, agrees to sell, and the George Delker Company, of Henderson, Ky., agrees to buy the quantity at the prices and upon the terms and conditions stated herein.

" '1. Quantity. Not less than 35 tons, and not more than 35 tons of Standard Springs, such as Elliptic, Platform, Concord Brewster, Jaxon, Longitudinal and Top.

" '2. Prices. Black, ......; Half Bright, $5.15 per cwt. Bright, ......; Extras, 25 per set on Plain Open Heads, $1.00 per set on Open Head Rubber Bush.

" '3. Terms. Note or acceptance maturing 60 days from date of invoice, or 2 per cent. discount allowed for cash if paid within 20 days from date of invoice. Settlements to be made monthly (not later than the 10th day) for the previous month's shipments.

" '4. Delivery. F. O. B. cars at Carthage, Ohio, with freight allowance at tariff rate per hundred pounds to Henderson, Ky. No freight allowed on less than 250 pounds.

" '5. Specifications. The buyer agrees to specify for the minimum quantity above mentioned in approximately equal monthly installments.

" 'The buyers agree that not less than 80 per cent. of the amount is to be specified for, for delivery, not later than May 1st, 1900, and the balance, if any, to be specified for prior to August 1st, 1900, and an option of 25 per cent. additional, if specified for delivery within each period named.

" 'Any goods named in this contract for which the buyer shall neglect or refuse to specify, may, at the option of the seller, be regarded as sufficiently specified above, or at the option of the seller, such neglect or refusal to specify may be treated as a lawful tender of all undelivered goods, and a refusal to accept same by the buyer, but shall not be construed as a waiver of any rights by the seller.

" '6. Exceptions. This agreement is contingent upon fires, strikes of workmen, accidents or other causes beyond the control of the seller.

" 'Note:—Claims for errors, deficiencies, or imperfections will only be entertained by the seller when made within 10 days after receipt of goods.

" 'It is especially agreed that in consideration of the sellers covering on the necessary steel to go into the goods that the buyers bind themselves to take not less than minimum amount mentioned, without rebate in price, in the event of a decline in the price of steel during the life of this contract.

" 'Accepted,                                    Accepted,
" 'The George Delker Co.,                  The Hess Spring & Axle Co.,
" 'C. P. Schlamp.                                Per. W. J. Haldeman, Agt.' "

All of the findings in regard to the contract for axles are repeated in regard to the contract for springs, except that it is stated that defendant specified for 22,490 pounds of springs, and did not specify for the remaining 47,510 pounds, and then follow the findings that:

"The contract price of the said 47,510 pounds of springs was $5.15 per hundred pounds, or a total of $2,446.76, and the cost of manufacturing, supply-

ing, and shipping same to the defendant at Henderson, Ky., would have been $2.64 per hundred pounds, or a total of $1,254.26, to which should be added $90, which would have been the freight cost to Henderson, Ky.—in all, $1,344.26. The difference between the contract price of said springs and what it would have cost the plaintiff to manufacture and ship the same to the defendant, including the freight thereon, would have been $1,102.50. Estimated as if this were a contract merely between a buyer, as such, and a seller, as such, upon the defendant's theory of this case, the damages of the plaintiff on the 47,510 pounds of springs not specified for would have been and would be $350."

After these findings the court found the following:

"Conclusions of Law.

"(1) That, in failing to specify for the axles and for the springs as stipulated in the contracts, the defendant was guilty of a breach of each of said contracts.

"(2) That the contracts sued on herein were not, nor was either of them, so indefinite and indeterminate as to the kind and variety of the articles embraced therein, and the prices to be paid therefor, as to be unenforceable.

"(3) That the defendant, being bound to make specifications whereby it would clearly designate which of the several varieties it would take, cannot avoid the contracts, or either of them, by failure to do what the defendant therein stipulated to perform in respect to such specifications.

"(4) That the proper measure of damages to be applied in this case is not that which would be appropriate to ordinary contracts of sale, namely, the difference between the contract price of the article and the market price thereof at the time fixed for the performance of the contract.

"(5) That whatever might have been the opinion and conclusion of the court in the premises if it could have looked alone to the opening paragraphs of the two agreements sued on, yet, when all of each of those papers and all the surrounding facts are considered in the light of the opinion of the Circuit Court of Appeals of the Seventh Circuit in the case of Western Hardware Co. v. Bancroft-Charnley Co., 116 Fed. 176, 53 C. C. A. 548, especially as it is supplemented by the opinion of the Supreme Court of the United States in Hinckley v. Pittsburg Steel Co., 121 U. S. 264, 7 Sup. Ct. 875, 30 L. Ed. 967, the court must conclude that the plaintiff is entitled to recover under each contract sued on the difference between the agreed price of the articles and what it would have cost the plaintiff, including freight to Henderson, Ky., to manufacture, supply, and deliver the axles and springs, respectively, though, if a superior court should be of a different opinion, this court has ascertained the damages resulting from the breach of the contracts upon defendant's theory of the case.

"(6) That the difference between the contract price and the cost of production and shipment of the springs contracted for is easily ascertainable, but there is more difficulty as to the axles. Although the model of the latter was furnished, and although all axles actually delivered conformed to it, and were of the $2.20 variety, still the defendant was not bound to specify for them only; and the court concludes that, while it must hold that there was a breach of the contract respecting the axles, it must also hold, in the absence of other facts, that it was that form of breach which would be the least injurious to the defendant, and not the one which would be most so, and therefore as to the axles it will adjust the recovery on the basis of a breach of the contract in respect to the $1.80 axle.

"(7) That, the proof not showing expressly such election by the plaintiff as the contracts gave him the right to make upon the failure to specify as therein required, the court concludes that such an election was made by the institution of this action on the 4th day of May, 1901, and by the averments then made in plaintiff's petition. While this finding may not be very material, the discretion of the court as to allowing interest may make the time of beginning the suit and making the election also the period for beginning the interest.

"(8) That neither of the two papers left by the defendant with the plaintiff, and described in the two paragraphs of the amended answer filed herein on

February 10, 1904, and each of which paragraphs is described as a third paragraph of said amended answer, was a sufficient or adequate specification either for the axles or for the springs referred to, and neither of them was ever intended by the defendant to be so, and neither of them was ever accepted as such by the plaintiff.

"(9) That the plaintiff is entitled to recover as shown in the following:

### "Judgment.

"Upon the facts hereinbefore ascertained and stated, it is considered and adjudged by the court that the plaintiff, the Hess Spring & Axle Company, recover of the defendant, the George Delker Company, the sum of twenty-one hundred and twenty-seven and $^{94}/_{100}$ dollars, being the aggregate amount ascertained to be due from defendant to the plaintiff by reason of the defendant's breach of each of the two contracts sued on herein, together with the interest thereon from the 4th day of May, 1901, until paid, and also plaintiff's costs herein expended, and may have execution therefor."

The defendant brings the judgment to this court for review by a writ of error.

George W. Jolly (Malcolm Yeaman, of counsel), for plaintiff in error.

Ernst, Cassatt & McDougall and R. D. Hill, for defendant in error.

Before LURTON and SEVERENS, Circuit Judges, and WANTY, District Judge.

WANTY, District Judge, after making the foregoing statement of the case, delivered the opinion of the court.

The defendant claims that the facts found by the judge below do not support the judgment rendered, because, first, the contracts are so indefinite as to lack mutuality; second, the plaintiff should have given notice of its election under the clause in the contracts giving it the option to consider the specifications sufficient, or that the neglect to specify might be considered a lawful tender of the undelivered goods and a refusal of acceptance; and, third, that the measure of damages should have been the difference between the contract price and the market price.

1. These contracts are definite as to the quantity of springs and axles, and as to the price and time of delivery, and nothing remained but the specification by the defendant of the sizes and varieties. A failure on the part of the defendant to keep its agreement to make these specifications as provided is the only way in which the contracts could be rendered uncertain; and it would be illogical to hold that by a breach of that part of the contracts the defendant could relieve itself of all the obligations it had assumed, and take the springs and axles only so long as the price of steel advanced, and, by failing to specify when the market declined, throw the loss upon the plaintiff. These were not options given to the defendant, but definite agreements by it for the purchase of the property mentioned, and the provisions for the specifications to be furnished did not make them so uncertain that an action did not lie for their breach. Hinckley v. Pittsburg Steel Co., 121 U. S. 264, 7 Sup. Ct. 875, 30 L. Ed. 967; Kimball Bros. v. Deere, Wells & Co., 108 Iowa, 676, 77 N. W. 1041; Ault v. Dustin, 100 Tenn. 366, 45 S. W. 981;

Minn. Lumber Co. v. Coal Co., 160 Ill. 85, 43 N. E. 774, 31 L. R. A. 529. The defendant cites many cases which are claimed to sustain its view, but they lack the agreement to take a quantity of goods, which is made certain by the contract itself, or could be made certain by evidence; thereby differing from the contracts here, where a definite quantity is fixed, and only its apportionment is to be made by the defendant.

2. We think that when the defendant refused to specify under the contract it became liable in an action for its breach, and that the clause providing that "any goods named in this contract for which the buyer shall neglect or refuse to specify, may, at the option of the seller, be regarded as sufficiently specified above, or at the option of the seller, such neglect or refusal to specify may be treated as a lawful tender of all undelivered goods, and a refusal to accept same by the buyer, but shall not be construed as a waiver of any rights by the seller," did not give any other or different remedy than the law, and therefore did not make notice of an election necessary. It only dispensed with the necessity of a tender, and by its terms this clause was not to be construed as a waiver of any rights the plaintiff had in its absence. This was not a case where the seller of the goods, after tender, elected to resell, and was obligated to give notice to the purchaser of such election.

3. The contention most strongly urged by the defendant is the failure of the trial judge to apply as a measure of damages the difference between the contract price and the market price, instead of the difference between the contract price and the cost of manufacture and delivery. The damages for the breach of these contracts is compensation, and, in arriving at what will accord compensation to the plaintiff, it is always necessary to look into the situation of the parties, as well as to all the provisions of the contract broken. If these were contracts of purchase and sale, as their opening clauses indicate, then the measure of damages contended for would be correct, and the recovery should have been on that basis, for, if it was contemplated by the parties that the plaintiff should have these springs and axles in stock, or go into the market and purchase them for delivery to the defendant, that would be the rule of compensation; but, if these goods were to be manufactured as the specifications were received, then such a rule would not be one which would afford compensation. The facts found by the trial judge indicate clearly that these were understood to be manufacturing contracts by the parties according to their former dealings, and the contracts themselves, when taken in their entirety, bear that interpretation. The provisions that specifications should be given from time to time, that strikes of workmen should excuse performance on the part of the plaintiff, that the plaintiff should purchase steel necessary for their manufacture, and defendant should take the full amount of springs and axles covered by the contracts, without rebate in price in event of a decline in the market, all point to a purpose of manufacturing the articles from time to time as specifications should be received from the defendant, and not to a sale of a manufactured product on hand, or to be purchased in the

market. If these were manufacturing contracts—and we agree with the court below, holding that they were—then the measure of damages is the difference between the cost of manufacture and delivery and the contract price as applied by the Circuit Court. Hinckley v. Pittsburg Steel Co., 121 U. S. 264, 7 Sup. Ct. 875, 30 L. Ed. 967; Kingman & Co. v. Western Mfg. Co., 92 Fed. 486, 34 C. C. A. 489.

The court below took those articles which could have been specified under the contracts upon which the plaintiff would have received the smallest profit, and therefore reduced the damages to the lowest amount compatible with the facts, of which course the defendant could not complain.

The judgment will be affirmed.