### STAFFORD CO. v. ALTA VISTA COTTON MILLS, Inc.

(Circuit Court of Appeals, Fourth Circuit. November 5, 1914.)

#### No. 1261.

SALES (§ 377*)—CONTRACT—MEETING OF MINDS—COMPLAINT.

A complaint for breach of a contract for the sale of certain looms set out a written contract to purchase the looms, signed by defendant, and contained a provision that all contracts were accepted subject to final approval by an officer of the company, and alleged that the contract in question was accepted by plaintiff's Southern agent, who was an officer of the company, and that such provision related only to road salesmen. It was further alleged that the contract provided that the details for the looms should be furnished by the buyer at least 60 days before shipment was required, and charged that the buyer never furnished such details, but attempted to cancel the order because, owing to a change in the management, it did not intend to continue manufacturing cloth in which the looms would be available, but that the looms ordered were standard machinery, and that the specifications in question related to details and attachments that could be readily supplied with any of the standard looms, and were practically immaterial as respected cost to plaintiff or its profit in the transaction. *Held*, that the complaint sufficiently showed a meeting of minds, and was therefore not demurrable on the ground that no contract was ever consummated.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1092; Dec. Dig. § 377.*]

In Error to the District Court of the United States for the Western District of Virginia, at Lynchburg; Henry Clay McDowell, Judge.

Action by the Stafford Company against the Alta Vista Cotton Mills, Incorporated. Judgment for defendant, and plaintiff brings error. Reversed.

F. S. Kirkpatrick, of Lynchburg, Va. (E. R. Preston, of Charlotte, N. C., on the brief), for plaintiff in error.

N. C. Manson, Jr., of Lynchburg, Va. (A. B. Percy and Wilson & Manson, all of Lynchburg, Va., on the brief), for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. This suit is brought by the Stafford Company, a New Jersey corporation, with its principal office in Massachusetts, against the Alta Vista Cotton Mills, Incorporated, a Virginia corporation, to recover damages for alleged breach of a contract by which the defendant agreed to purchase certain cotton mill machinery from the plaintiff.

The contract and certain correspondence relating thereto are attached to the declaration as exhibits. A demurrer was interposed by the defendant upon various specified grounds, which are in substance

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that there never was a complete contract between the parties, but only negotiations which were intended to form the basis of a future contract; that there were certain specifications concerning the machinery which the purchasing company agreed to furnish, but never did in fact furnish; that until these specifications were furnished the plaintiff company had the option to approve or reject the contract; and that there was no final approval by an officer of the company as provided by the contract. The District Court sustained the demurrer and dismissed the suit, and the correctness of that ruling is challenged by writ of error to this court.

The contract in question was executed by filling in and signing a printed blank at the head of which appears this recital:

"All contracts accepted subject to final approval by an officer of the company."

With reference to this provision the amended declaration contains the following averments:

"The plaintiff avers that it duly accepted said contract, and that the defendant was so advised, and as a matter of fact the plaintiff actually had proceeded far with the manufacture of the machines to be supplied by it under said contract."

"The plaintiff further alleges that the contracts, Exhibits A and B, were executed in behalf of the plaintiff by Fred H. White, Southern agent; that said White was an officer of the plaintiff company, fully authorized and empowered to make binding contracts in behalf of the plaintiff, and that said plaintiff was in fact bound by said contracts when so executed as herein set forth by said White; that Exhibit A was drawn on a printed form, and the top line of which, 'All contracts accepted subject to final approval by an officer of the company,' had reference to orders taken by road salesman, and not to White, who was not a road agent, but an officer authorized to bind the plaintiff in said contract, and the defendant was informed that said White had entire charge of said contract and the matters therein provided for when its officers came to Boston to request a release from said contract as set forth in Exhibits C and D."

In our judgment these averments are sufficient as a matter of pleading to charge that this contract received the final approval required by the caption, and that defendant cannot escape the obligation which it entered into on the theory that it was not binding upon the plaintiff because it is not specifically alleged to have been approved by its proper officer. If the declaration fails to state a cause of action, it is not for lack of allegations that the contract was executed by authority and had been approved by an officer of the plaintiff company, but because the contract itself, as set forth in the declaration, is so indefinite and incomplete that neither party can enforce it against the other.

The substantial provision of the contract is an agreement to purchase from the plaintiff 292 40-inch Ideal automatic looms and accessories, "described in the specifications attached," at the price of $137 each. Certain attachments are also mentioned, which were to be extra at prices named. Immediately after this provision the following is recited:

"The details according to which these looms will be built will be furnished by the purchaser at least 60 days before shipment is required."

The contract price was stated to be $44,603, of which a certain portion was to be paid in cash and the remainder in stock of the defendant company. The specifications referred to in the contract are set forth in the record, and apparently relate to certain details of construction which, as the quoted paragraph shows, were to be furnished by the purchaser. The declaration alleges that the defendant failed to furnish these details, although duly requested to do so by the plaintiff.

This summary of the agreement discloses the opposing contentions of the parties. The defendant asserts that the absence of these details prevented a meeting of minds, and that there was not and could not be a completed agreement until these details were supplied. On the other hand, the plaintiff contends that the document signed is a complete and binding contract, which is not rendered indefinite in any essential respect because the defendant failed to furnish certain details in accordance with its agreement. Upon this point the controversy turns.

Bearing upon this issue the amended declaration contains a paragraph, which upon demurrer must be accepted as true, and which reads as follows:

"And said plaintiff further avers that the automatic looms so specified in said contract were of a standard form, well known by the cotton mill manufacturing trade; that the details of said looms, which said defendant agreed to furnish, did not increase the cost or difficulty of manufacture, nor did they increase or decrease the profits which would have accrued to the plaintiff from their manufacture; that the said looms are so manufactured and made that the details to be furnished by the defendant could be easily and readily applied to said standard form of loom provided for by said contract; and that although the plaintiff was ready, able, and willing at all times to comply with every detail of the said contract, and with such specifications as the said defendant could reasonably have required, yet the said defendant declined and refused to furnish said specifications, and declined and refused to purchase the said looms as provided in said contract."

In addition to the foregoing there are various allegations to the effect that the defendant, as well as the plaintiff, understood that a binding contract had been executed, and these allegations contain a statement of facts and circumstances which give support to the general averment. For example, it appears that the defendant issued a prospectus, a few months after this contract was entered into, which, among other things, describes the location and equipment of its manufacturing plant, including the number and cost of looms stated to have been contracted for with the plaintiff.

It is inferable that afterwards, and before the mill was ready for operation, there was a change of management of the defendant's business, and also a change of policy respecting the class of goods to be manufactured. One of the exhibits referred to is a letter from the defendant to the plaintiff, in which the writer says he is instructed—

"to notify you that on the class of goods that will be manufactured by the Alta Vista Cotton Mills it will be impossible for us to use your looms. We would therefore thank you to cancel the order for same given you by our former management."

It is certainly difficult to harmonize this communication with the claim now made that the contract in question was not understood to be binding when it was executed, but was in the nature of a proposal, or the basis for further negotiations, which did not commit the defendant until it furnished the specifications, and which the plaintiff would then be at liberty either to accept or decline.

Although not distinctly asserted in the brief, it appears to be the defendant's contention that there could be no valid approval of the contract by an officer of the plaintiff company until after the defendant furnished the details which would make the specifications complete. But we do not think it necessary to so construe the agreement. On the contrary, it seems clear to us that the required approval could be given at any time after the contract was signed and without waiting for the purchaser to specify the details. And such approval could be given without substantial risk to the plaintiff, because, taking the averment above quoted at its face value, the specifications which the defendant was to furnish involved only minor and unimportant departures from the standard type of loom which the plaintiff was to supply, and were practically immaterial as respects cost to the plaintiff or its profit from the transaction. The fact may turn out on trial to be otherwise, but it stands unqualifiedly alleged in the declaration.

We are therefore of opinion that the declaration in this case states a prima facie cause of action and that the demurrer ought not to have been sustained. And this conclusion seems to be in accord with the prevailing trend of judicial decisions, as will be seen by the following citations:

The case of Delker v. Hess Spring & Axle Co., 138 Fed. 647, 71 C. C. A. 97, exhibits features which are quite analogous. In that case the purchaser bought 2,500 sets of Nos. 11 and 12 axles in sizes up to and including 1½-inch, and agreed to specify approximately the various sizes of springs which he was to take in monthly installments. It was further provided that:

"Any goods named in this contract, for which the buyer should neglect or refuse to specify, may, at the option of the seller, be regarded as sufficiently specified above, or, at the option of the seller, such neglect or refusal to specify may be treated as a lawful tender of all undelivered goods, and a refusal to accept same by the buyer, but shall not be construed as a waiver of any rights by the seller."

The purchaser declined to specify the sizes which he wanted, and was sued for the profits which the seller would have made if the contract had been executed. The Circuit Court of Appeals for the Sixth Circuit, citing Hinckley v. Pittsburgh Steel Co., 121 U. S. 264, 7 Sup. Ct. 875, 30 L. Ed. 967, and other cases, says:

"These contracts are definite as to the quantity of springs and axles, and as to the price and time of delivery, and nothing remained but the specification by the defendant of the sizes and varieties. A failure on the part of the defendant to keep its agreement to make these specifications as provided is the only way in which the contracts could be rendered uncertain; and it would be illogical to hold that by a breach of that part of the contracts the defendant could relieve itself of all the obligations it had assumed, and take the springs and axles only so long as the price of steel advanced, and, by failing to specify when the market declined, throw the loss upon the plaintiff.

These were not options given to the defendant, but definite agreements by it for the purchase of the property mentioned, and the provisions for the specifications to be furnished did not make them so uncertain that an action did not lie for their breach."

A similar conclusion was reached in Salmon v. Helena Box Co., 147 Fed. 408, 77 C. C. A. 586, in which the Circuit Court of Appeals for the Eighth Circuit uses the following language:

"The trial court properly held that the parties made a valid and enforceable contract obligating defendants to give shipping instructions to plaintiff within a reasonable time, and requiring plaintiff, within like reasonable time, to make shipments according to the instructions. No option was left to either party. The buyers could no more neglect to give shipping instructions without violating their obligation than the seller could neglect to make shipments after receiving the instructions without violating its obligation. The contention of defendants' counsel, that the clause requiring shipments to be made according to shipping instructions to be given from time to time by the buyers renders the contract void for uncertainty or enforceable only at the option of the buyers, is not sound."

In Hardwick v. American Can Co., 113 Tenn. 657, 88 S. W. 797, the Supreme Court of Tennessee discusses elaborately the question whether a purchaser of manufactured goods, for which he was to furnish specifications, can decline to specify in accordance with his agreement, and then claim that there has been no meeting of minds because of the absence of these details. In that case it appears that Hardwick, a stove manufacturer, sold to the defendant 5,000 or more stoves, which were to be delivered within the following year. There were 20 different sizes, kinds, and prices of stoves, and they were to be shipped out upon the order of the purchaser. There was failure to order and specify the sizes and kinds of stoves to be shipped, and the suit of Hardwick was sought to be defended on the ground that there was no complete and binding contract. The court, among other things, says:

"It cannot be doubted that in the ordinary course of business, in respect to which men generally make their calculations, if the defendant had carried out its contract and ordered the 5,000 stoves, it would have ordered substantially the same kinds of stoves which were used to supply the same trade under previous contracts with the Conklin factory, as it anticipated doing when the contract was entered into. Equally there can be no doubt, under the facts found by the Court of Chancery Appeals, that the defendant's failure to carry out the contract by ordering the 5,000 stoves resulted from its determination pending the running of the contract to drop a certain class of its customers, which it had previously supplied, viz., retail dealers. Having dropped these, it then desired to escape from the contract, and is now using the element of apparent uncertainty supposed to reside in the contract to elude the obligation to faithfully carry it out. It is the duty of the court, however, to ascertain, if it can, the meaning which the contract bore in the minds of the parties, and to enforce that meaning or intention. For the purpose of discovering this intention, we must view the situation or the parties and their surroundings so as to place ourselves in the position which they occupied, and thus be able to see the things spoken of in the contract as they saw them. Taking this point of view, with the aid of the facts found by the Court of Chancery Appeals, we think it clear that the meaning of the contract is as above indicated, and that this enables us to attain substantial certainty."

To the same effect and quite instructive is the case of John Single Paper Co. v. Hammermill Paper Co., 96 App. Div. 535, 89 N. Y. Supp. 116, in which the nature of the contract then under consideration· and the conclusion of the court will appear from the following excerpt from the opinion:

"We think that the order given by plaintiff to defendant, if and when accepted, constituted a complete and binding contract between the parties, subject to the right of defendant to cancel the same if plaintiff did ·not within due time furnish the necessary and proper specifications. The order which plaintiff signed and executed specified the amount and general kind and quality of paper to be furnished, the price, and the terms of payment, with other details relating to shipment and delivery. The specifications which were to be furnished related only to the details of size and weight of the paper which was to be supplied. These details were limited, and, as found by the referee, related to the size and consequent weight of the sheets. It was not intended that they should affect either the general character, quality, or price of the paper, and there is no sufficient evidence or finding by the referee that the specifications in these respects violated any of the agreements or negotiations of the parties. In our opinion, the contract was not rendered incomplete or indefinite in its substantial provisions and requirements because plaintiff was left in the future to furnish these details of size and weight."

In the case at bar the record indicates that defendant failed to give the specifications which it agreed to furnish, because it had decided to change the class of goods to be manufactured, and did not want the kind of looms which had been ordered from the plaintiff. It therefore seeks to take advantage of its own refusal to comply with its part of the agreement in order to evade the contract obligation into which it had entered. The defense it sets up is based wholly upon its own default, and should not be permitted to prevail without more persuasive reason that now appears. In short, we are convinced that the facts set forth in the declaration entitle the plaintiff to a trial of the action.

The judgment must be reversed, and the case remanded for further proceedings not inconsistent with this opinion.

Reversed.